UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-104 (PJS)

UNITED STATES OF AMERICA,

        Plaintiff,

                             **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

GLEN ROBERT ANDERSON,

        Defendant.

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Angela M. Munoz, Assistant United States Attorney, hereby submits its memorandum in support of its position with respect to the sentencing of defendant Glen Robert Anderson.

Although Anderson is only 24 years old, he has engaged in prolific and persistent sexual abuse of male children. Anderson's predatory behavior knows no bounds – he has committed hands-on sexual abuse of children in our community, driven across the country to pursue relationships with children, and extensively exploited children via the internet. Anderson has extensive knowledge of computers and other electronic devices, which provides him additional access to children, and a means by which to cover up his sexual abuse through the use of encryption tools and sheer obstructive actions.

For these reasons and those that follow, the United States requests that the Court impose a sentence of at least 420 months' imprisonment and a lifetime of supervised release with special conditions. Such a sentence is necessary to deter Anderson and protect the public, namely male children, from his future crimes.

## I. Background

### A. *Anderson's Instant Offense Conduct*

For approximately five years, Anderson used his position as owner and administrator of an online gaming/chat platform referred to as "The Republic" and "The Public Community"[1] for years to groom and sexually exploit minor boys. In some instances, Anderson solicited and received child pornography from the minor boys that he met online. He also enticed victims into meeting him in person to engage in sexual activity. Anderson has served as a substitute teacher at the Anoka County High School,[2] where he is believed to have begun grooming at least one child for future victimization, as further described below.

#### 1. Initial Identification of Anderson

The FBI's investigation of the instant offense conduct began from an investigation of a TOR hidden service site dedicated to sexual abuse of minor

---

[1]   These operated from a variety of URLs and are collectively referred to as "the forum" in the information. Anderson began the activity described in the information when he was a minor and continued as an adult.

[2]   Since the execution of a search warrant by the FBI on March 10, 2022, he no longer serves as a substitute teacher in the district.

boys.  Data from the site reflected that in November 2016, a user by the name of "panzerboy" who was later identified as Anderson posted multiple child pornography images and a description claiming that the images depicted him. Anderson, using the "panzerboy" name, also expressed sympathies with Hitler and Nazis to others on the forum and employed related literature in grooming activities directed at his victims.  Further investigation revealed that Anderson was running a server for the forum from his residence in Coon Rapids, Minnesota.

2.  Victim 1's Reports Regarding Production of Child Pornography and Other Exploitative Conduct

In April 2021, within days of the FBI determining that a server was likely operating from Anderson's residence, Victim 1, now an adult, reported prior sexual abuse by Anderson at a sheriff's office in Ohio.  In interviews with the sheriff's office and later the FBI, Victim 1 described getting involved in the forum, which is how he met Anderson.  Anderson began running the forum when he was a teenager, and met Victim 1 online when Victim 1 was approximately 9 years old and Anderson was approximately 13 years old.  Victim 1 described years of grooming by Anderson, who provided Victim 1 with in-forum perks and eventually administrator status.  Victim 1 described Anderson's solicitation of child pornography images from him, which continued from when Victim 1 was 13 and Anderson was 18, until they were 15-16 and 20-21, respectively.  This conduct is charged in Count 1 of the information.

By virtue of his administrator status on the forum, Victim 1 saw data reflecting Anderson's sexual abuse of other minors on the forum, including by screen-sharing child pornography and soliciting child pornography from forum members.  Victim 1's concern for other minors led him to report Anderson's conduct.

Victim 1 confronted Anderson about his conduct both privately and publicly on the forum, leading to an online uproar amongst users.  From the conversations, it is apparent that Anderson believed that either Victim 1 and/or other users had reported his activity to law enforcement.  Victim 1 provided the FBI with screen captures and audio recordings of conversations on the forum, including conversations in which Anderson (identified as user "Anderson") made multiple admissions about having a sexual interest in children and his prior conduct.   During these conversations, Anderson repeatedly threatened to "release [Victim 1's] shit"—referring to nude images of Victim 1 as a minor—if he did not withdraw his claims about Anderson's sexual abuse.  This conduct is charged in Count 4 of the information.

Victim 1 also provided the FBI with text messages contemporaneous to Anderson's attempted enticement of him to travel from Ohio to Minnesota to stay with Anderson when Anderson was an adult.  Specifically, the messages reflect Victim 1's conversation with his mother about Anderson's request that Victim 1 travel there for a week, citing Anderson's offer to pay for a plane ticket,

food, and lodging at Anderson's residence. At the time, Victim 1 was 17 and Anderson was 22. Victim 1's mother did not permit him to travel.

        3. <u>Victim 2's Reports Regarding Production of Child Pornography and Enticement</u>

The information Victim 1 provided to the FBI included Victim 2's report of sexual abuse by Anderson similar to that suffered by Victim 1. Victim 2 met Anderson at age 14 or 15 on Grindr.[3] Within a day or two of their initial online communications, Victim 2 told Anderson their[4] true age, which was approximately 14 or 15 at the time. The two chatted on Grindr for a period of time, and then Anderson suggested they move their communications to Snapchat, where Anderson used a screenname including "glenpai." The two exchanged pictures on Snapchat, including sexually explicit images.

Anderson groomed Victim 2 by offering to build them a new computer, which Victim 2 understood to be in exchange for sexual activity with Anderson. Within a week after Anderson met Victim 2 online, Anderson began engaging in the sexual activity charged in Count 2 of the Information, including touching, oral sex, and attempted anal sex, which Victim 2 refused. Victim 2 described Anderson as having recorded two or three recordings of their sexual activities, as charged in Count 3 of the Information, and sent them to Victim 2. Victim 2 deleted these recordings. Victim 2 also described Anderson as having shown

---

[3]     Grindr is a social media application for men to seek male sexual partners.

[4]     Victim 2 uses gender-neutral pronouns.

them child pornography files of unknown minor boys and discussing the parts of the images/videos he enjoyed.  Victim 2 participated in the conversations on the forum recorded by Victim 1.

### 4.  Search of Anderson's Residence and Subsequent Conduct

FBI conducted surveillance on Anderson's residence for weeks prior to the execution of a search warrant.  On March 9, 2022—the night before the search warrant was to be executed—law enforcement observed Anderson return to the residence with an unidentified, suspected minor in his car.  The minor stayed overnight with Anderson, who drove the minor back to the minor's residence prior to going to Anoka High School to substitute teach the next day.  The minor and his mother were interviewed later, as further described below.

On March 10, 2022, FBI executed a search warrant for Anderson's residence, where he lives with his father, the vehicles, and Anderson's person.  Anderson was able to surreptitiously lock his cell phone prior to seizure by repeatedly triggering the fingerprint unlock with the incorrect finger.   Other devices seized from the residence—including a computer believed to be Anderson's primary computer for running the forum—is also encrypted.  Efforts at decryption remain ongoing.   Anderson invoked his right to counsel immediately, and retained his current defense counsel.  After visiting her office, Anderson and his father drove to three T-Mobile stores, and then to the minor's house.  The minor was not home at the time.

The minor and his mother told FBI that the minor had met Anderson three weeks prior when Anderson substitute taught the minor's class. Anderson lent a laptop to the minor, which the minor provided to the FBI. The minor reported no sexual activity with Anderson, but reported that Anderson had discussed the minor's sexual orientation with him. When the minor told Anderson he was not gay, Anderson insisted that Anderson could prove the minor wrong. After attempting to find the minor at his residence after the search warrant was executed, Anderson called the minor, who surreptitiously put his mother on speakerphone during the call. During the call, Anderson told the minor he could be in some trouble with the FBI, that he wished they had gotten closer during their time together, and that if the FBI asked him any questions, he should not say anything to them.

## B. *Charges and Plea*

On May 27, 2022, a four-count information was filed in the District of Minnesota charging Anderson with two counts of production and attempted production of child pornography involving two different victims, one count of enticement of a minor, and one count of interstate communication with intent to extort. (Dkt. No. 1). Anderson pled guilty as charged in the information on June 28, 2022. As stipulated in his plea agreement, Anderson was taken into custody at the conclusion of his plea hearing and has remained detained since that time.

### C. *Psychosexual Evaluation*

Pursuant to the terms of his plea agreement, Anderson participated in a psychosexual evaluation while in custody at the Sherburne County Jail. A comprehensive report regarding the psychosexual evaluation was completed and is filed under seal as Government Exhibit 1. Notably, the report concluded that Anderson is at a "moderately-high risk of sexual reoffending" and the evaluating doctor made extensive recommendations relating to sex offender treatment. The report warned that Anderson "should refrain from socializing with minor peers or employment where he holds authority over minors or vulnerable adults. If incarcerated, prison staff should be aware of his exploitation of vulnerable individuals or youthful looking individuals and limit access to this population." *See* Government Exhibit 1 at 19.

### D. *Polygraph Examination*

Also pursuant to the terms of his plea agreement, Anderson participated in a polygraph examination while in custody at Sherburne County Jail. Although he refused to participate in the polygraph as initially scheduled, Anderson conferred with his defense counsel, and participated in the rescheduled polygraph in December 2022. A report documenting the polygraph examination was completed and is filed under seal as Government Exhibit 2. As noted in the report, the focus of the examination was to determine if Anderson had failed to disclose any physical sexual contact with minors when

he was an adult.  The evaluation noted that "no deception indicated" from Anderson with respect to this topic.

## II.  Analysis

The United States requests that the Court impose a sentence of at least 420 months' imprisonment and a lifetime of supervision on Anderson.  Well into his history of exploiting children, Anderson pursued and obtained a position of trust in a school setting where he worked with the very children he sought to victimize.  He capitalized upon his position to learn information about his victims to aid his commission of the crimes.  Moreover, Anderson did not limit himself to the immediate reach of his community.  He also pursued victims via the internet, in Minnesota and beyond.  Anderson's conduct clearly shows that no male child is safe from Anderson.  The recommended sentence seeks to balance the clear needs for deterrence, just punishment, and the need to protect the public from Anderson, with his timely acceptance of responsibility and subsequent actions consistence with acceptance of responsibility, as further described below.

### A. *U.S. Sentencing Guidelines Calculations*

The Court employs the U.S. Sentencing Guidelines as "the starting point and the initial benchmark" in imposing its sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Court then must consider the factors enumerated in 18 U.S.C. § 3553(a), in determining whether the applicable guideline range

provides for an appropriate sentence. *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009). Where the Court finds that the Sentencing Guidelines adequately account for the offense and relevant circumstances, it "shall impose a sentence of the kind, and within the range" prescribed. 18 U.S.C. § 3553(b)(2).

The PSR assesses some different guideline provisions than those contemplated in the plea agreement. (PSR ¶¶ 42-76, 121-122). For example, the PSR assesses an upward adjustment to account for the ages of Victim 1 and Victim 2. (PSR ¶¶ 43, 61). The United States does not contest the PSR's calculation, or the facts underlying the application of this enhancement. The United States, however, maintains a position consistent with its stipulations in the plea agreement. Regardless, there is no effect on the overall guideline range because the PSR concurs with the parties' agreement that Anderson's total offense level is 43, his criminal history category is I, and the applicable advisory guideline range is life imprisonment. (PSR ¶¶ 121-122). While the Court has an obligation to calculate the applicable guideline range correctly, there is no dispute over the total applicable guideline range in this case. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018).

### B. *Recommended Terms and Sentencing Factors under 18 U.S.C. § 3553(a)*

The United States is requesting that the Court impose a lengthy sentence – 420 months' imprisonment and a lifetime term of supervision. This request

seeks to balance the clear danger Anderson poses to the male children, within his community and beyond, with his acceptance of responsibility and willingness to spare the victims further agony by proceeding via information in this case.

      1.  <u>Aggravating Factors</u>

Even at a young age, Anderson has demonstrated a clear and persistent sexual interest in male children. Anderson's sexual interest in male children knows no bounds. He has engaged in extensive efforts to proactively develop relationships with children and then groom and entice them to engage in sexual communications and activities with him. Anderson has used various items of value, including enhanced status on his gaming forums, to groom and entice. Anderson's sexual abuse of children is not limited to online sexual exploitation. Anderson has traveled within his own community and across the country to pursue relationships and hands-on sexual abuse of children. As evidenced by law enforcement finding Anderson with a 14 year-old victim in the time leading up to executing a search warrant at Anderson's home, Anderson's danger to the community is significant.

Under these circumstances, Anderson's age is an aggravating factor. Research has shown that a younger offender is significantly more likely to reoffend than an older one. *See* M. Boccaccini, D. Murrie, S. Hawes, A. Simpler & J. Johnson, *Predicting Recidivism With the Personality Assessment Inventory in a Sample of Sex Offenders Screened for Civil Commitment as Sexually Violent*

*Predators*, 22 PSYCHOLOGICAL ASSESSMENT 142, 142-148 (2010); Karl Hanson & Kelly Morton-Bourgon, *The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies*, 73 J. OF CONSULTING AND CLINICAL PSYCHOLOGY 1154, 1154-1163 (2005).

Additionally, Anderson has unquestionably proven himself significantly savier than many other people engaged in the production and trafficking of child pornography and other internet-based exploitation of children. Anderson administered his own gaming forum, used multiple other online communication platforms, used coded language to communicate his interest, and utilized his technological know-how to conceal his activity from law enforcement and others. Such a defendant poses a much more insidious risk than the average child pornographer, and is also considerably more difficult for a probation officer to supervise in the future.

Anderson had a well-developed sexual interest in children when he sought out and gained employment at the Anoka-Hennepin School District as a substitute secretary and paraeducator, and as a tutor while affiliated with Anoka Technical College. There is no doubt that Anderson secured these employment opportunities as another way to gain access to children. The 14 year-old child that Anderson was found with in March 2022 was a child Anderson met while working as a substitute paraprofessional in the child's class. Anderson's employment goals were transparent and solely focused on

12

gaining access to children in order to find additional victims and sexually exploit them.  Anderson's sexual interest in children coupled with his repeated pursuit of children to satisfy his sexual interests renders him a significant danger to the community.

      2.  <u>Mitigating Factors</u>

Nonetheless, the proposed sentence constitutes a considerable downward variance in recognition of Anderson's willingness to spare the victims further trauma by pleading guilty prior to indictment.  Additionally, the proposed sentence accounts for Anderson's historical victimization.  Finally, and importantly, the proposed sentence recognizes the affirmative step that Anderson has taken to demonstrate his acceptance of responsibility.  As noted in the PSR, Anderson locked and encrypted his computers and electronic devices.  (PSR ¶ 32).  Following the entry of a guilty plea to the information, Anderson met with law enforcement and the undersigned to provide passwords and other assistance to help law enforcement to unlock and unencrypt the devices seized from his residence during the search warrant.  Law enforcement continues to work to gain access to these devices and unwind the complicated nature of Anderson's efforts to hide his communications and online predatory activities.  Law enforcement has uncovered additional children victimized by Anderson.  Anderson's assistance in this regard is consistent with acceptance of responsibility, but does not rise to the level of substantial assistance to

authorities. As described in U.S.S.G. §5K1.1, a substantial assistance sentencing reduction is "directed to the investigation and prosecution of criminal activities by persons other than the defendant." U.S.S.G. §5K1.1, Cmt. 2. Anderson's assistance has been focused on his own activities and assisting law enforcement in their investigation of him. Accordingly, the United States' recommendation factors in all bases for leniency that merit consideration in this case.

### C. *Supervised Release*

The United States requests that the Court impose a lifetime term of supervised release, as counseled by the U.S. Sentencing Guidelines and stipulated to by the parties in their plea agreement. Anderson poses a serious danger to male children and is highly capable of deception – both in his online exploits and his hands-on offenses. Further, Anderson is incredibly tech-savy and has extensive knowledge of computers and encryption. Someone so adept at manipulation coupled with extensive knowledge of encryption and electronic devices will be exceedingly difficult to supervise, even assuming Anderson harbors a sincere desire for rehabilitation. That his offenses occurred through online obfuscation further points to the need for intensive supervision with special conditions tailored to ferreting out impermissible internet activity. The extended duration of Anderson's offense conduct further counsels for a lifetime term of supervision.

Additionally, the Court should impose special conditions tailed to Anderson's offense. The Court has "wide discretion when imposing terms of supervised release within the statutory framework provided by Congress." *United States v. Fields*, 324 F.3d 1025, 1026-27 (8th Cir. 2003). Special conditions of supervised release are appropriate if "reasonably related" to the applicable sentencing factors described in 18 U.S.C. §§ 3583(d)(1), 3553(a), and involve "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervision, 18 U.S.C. § 3582(d)(2).

Given the nature of Anderson's offense conduct, the Court should require him to participate in sex offender treatment programming, and should restrict his access to electronic devices, the internet, and his access to minors. Further, the special conditions should include an order not to contact any victims of the instant offense and of the conduct to which he pleaded guilty in the plea agreement (which applies to unidentified and identified victims).

## III. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of at least 420 months' imprisonment and a lifetime term of supervision to follow. The requested sentence is commensurate with the Defendant's criminal conduct and consistent with the Section 3553(a) factors. Most importantly, under all the facts and circumstances of this case, it is also fair and just.

15

Dated: January 10, 2023     Respectfully Submitted,

            ANDREW M. LUGER
            United States Attorney

            */s/ Angela M. Munoz*

            BY:  ANGELA M. MUNOZ
            Assistant United States Attorney