UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 0:19-CR-0019-PJS

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **DEFENDANT'S RESPONSIVE**<br>) **MEMORANDUM TO THE**<br>) **GOVERNMENT'S RESPONSE** |
| GLEN ROBERT ANDERSON, | )<br>) |
| Defendant. | )<br>) |

Pursuant to LR 83.10 (g) and (h) of the Local Rules of this Court, and the permission of this Court, Defendant, Glen Robert Anderson, ("Mr. Anderson") submits his response to the Government's Responsive Memorandum to his Position Paper.

### I. Defendant did not have a "family and resources to address the conditions" so as to avoid his criminal acts.

To the contrary, the facts are clear that Mr. Anderson was a child who was actively abused and alternatively ignored by his mother for most of his formative years. (PSR, 17-20.) Mental health records dating back to 2013 note that Mr. Anderson's mother acknowledged that Mr. Anderson spent "all of his time in the basement away from other family members," and that she wanted him placed in a "residential treatment facility or foster care because she could not handle Glen's behavioral difficulties."  Later that same year in 2013, (at age 15), Mr. Anderson's father obtained shared custody of him, and he escaped the physical and emotional abuse of his mother and her husband.  (Id.)   As a result of his abuse, Mr.

1

Anderson developed and was diagnosed with Social Phobia[1] per records from Canvas Health dated 2013. (PSR., p. 21, para 99.)

By the time his father rescued him from his mother's abuse, Mr. Anderson's use of and reliance upon the internet to provide him with "friends" was already entrenched. His well-meaning father worked long hours to support the family and as a result was often not present in the home, leaving Mr. Anderson to be raised by other "father figures" that he would discover on-line. (Id.) During puberty, Mr. Anderson was being groomed consistently by these older men- one of whom travelled from North Dakota to rape him at age 15. The grooming by these older men occurred when Mr. Anderson was ages 12-14 and living with his mother. The sexual abuse and rapes by older men began when Mr. Anderson was 15 years old and living with his father. (PSR, p. 21, para. 96.)

The record is clear that Mr. Anderson's father loves him and supports him. (PSR, p. 19, para. 91.) It is also clear however, that Mr. Anderson's father has limited capacity and or tolerance with which to understand his son's sexuality and criminal acts. (Id.) According to Mr. Anderson, his father was often preoccupied with physical ailments (heart attacks and pancreatitis), and he also struggled with high functioning autism. The senior Mr. Anderson has made excuses for his son's behavior and has determined that his son's sexuality is a "choice" that has caused his legal troubles. (Id.) His father has also, to his son's chagrin, engaged in victim blaming in his attempts to defend his son and secure the mandatory minimum sentence. (Id.)

The record is also clear, that neither of Mr. Anderson's parents, for different reasons, were equipped with the skills necessary to redirect and educate Mr. Anderson about healthy

---

[1] (in addition to Asperger's Disorder- not related to the abuse.)

sexual boundaries and relationships.  (PSR., p. 22, paras 99-100.)  Neither parent unfortunately supervised his activities nor were aware of the dangerous world in which he lived for all of his childhood.  (Id. at para 100.)  The Government's claim is unsupported and clearly contradicted by the record before the Court.

### A. Mr. Anderson's "parenting by internet" provided a distinct outlet for his own grooming as a juvenile.

The FBI began its investigation into Mr. Anderson with the belief that he was a child victim of sexual exploitation. The agency was not wrong.  What likely surprised the agency is the discovery that Mr. Anderson was the one who posted the video of his own rape when he was 15 years old at the hands of a stranger who travelled from North Dakota. (PSR, p. 4-5, paras. 16 and 17.)

Mr. Anderson, unlike the other defendants referenced in the Government's responsive memorandum, continues to be victimized even today as even inmates at the Sherburne County jail recognize him from his juvenile online porn profile, "Panzerboy."  In fact, he has gotten called out by this alias and his other (adult) online alias: "Havoc."  With regard to his rape video that was posted on Boy Vids (since removed) there is no doubt that this video is still circulating across hundreds of thousands of computer screens and will likely continue to circulate for as long as there is an internet.

### B. Mr. Anderson's young appearance is a fact, not a convenient argument.

Mr. Anderson argues that his "age, mental and emotional conditions, and physical condition and appearance are present to an unusual degree, and this distinguishes his case

3

from the typical case," and as such, a departure is warranted. This argument is based in reality, not conjecture or convenience.

As an adult, Mr. Anderson was flagged as juvenile on popular websites such as Pornhub, Xhamster and other similar sites. His pictures always garnered a multitude of comments about his youthful and childlike appearance on all social media platforms. Probation agent Heino has also remarked on his "extremely youthful appearance." (PSR, p. 29, para. 145.) In addition to this, per Mr. Anderson, multiple other persons from the victims listed in the memo to employers also have commented about Mr. Anderson's very youthful and fragile physical appearance.

II. **The Mandatory Minimum Sentence is appropriate as there are no truly "comparable" cases in the District of Minnesota.**

The only way in which the district court cases that the Government cites is remotely applicable to Mr. Anderson's case is that the charges are similar. In order to fully understand the context of Mr. Anderson's crimes, we must first understand his timeline when his engagement with minors began and ended. As you will see below, Mr. Anderson was a juvenile for most of the complained "grooming" of children.

Additionally, to fully understand the nature of his "exploits," and his belief that he was in "relationships" with minors (some of them growing into adults alongside of him including WC and SE,) we must also understand who his victims were and how he came to know them.

4

*JNK: (Counts 2 and 3):*

While not downplaying the seriousness of Mr. Anderson's offense, there is only one juvenile who was physically sexually abused by Mr. Anderson: 15-year-old, JNK.[2] It must be noted that while Mr. Anderson did videotape his three sexual encounters with JNK, he did not widely disseminate the videos- rather the *only* person that he sent the videos to were JNK himself who requested them. (PSR, p. 3, para 12.)

*SE: (Counts 1 and 4):*

Mr. Anderson knew SE for years through his video game forum. He is approximately four and a half years older than SE. When SE was approximately 13, he began sending nude pictures and videos of himself to Mr. Anderson who was approximately 17 years old. This activity continued for approximately three years (with Mr. Anderson reciprocating and sending photos and videos of himself to SE); the exchange ended when Mr. Anderson was 20 years old, and SE was 17 years old. The two never met in person. Much later in 2021, Mr.

---

[2] While it is not Mr. Anderson's intent to downplay his crime of sexually abusing minor JNK, the circumstances under which the two met need to be examined for context. Mr. Anderson was not looking for a juvenile sexual partner when he installed *Grindr*, an adult dating application for smartphones. In fact, he used the application to find adult male partners and did in fact engage in consensual adult sexual relationships facilitated through that application. He found himself engaging with an older man, including a 52-year-old man named "Mike." That experience proved to be trauma provoking- as "Mike" reminded him of his rapist from North Dakota who crossed state lines to rape him in a public park in 2014 when he was 15 years old. As a result of that encounter, Mr. Anderson went back to the "drawing board" and looked for men closer to his own age. It was then he discovered JNK who initially claimed that he was 18 years old. The two found a joint interest: they enjoyed the same rare video game. It was not until the last time of several that they engaged in sexual relations when JNK told Mr. Anderson that he was 15 3/4 years old.

The Government claims that Mr. Anderson induced JNK to continue his sexual exploits with him by building him a computer. Mr. Anderson claims that he built the computer for JNK so the two could continue playing the video game that they both had fond interest because JNK's then computer could not handle the software necessary for their gaming.

Anderson threatened to extort S.E. regarding these pictures when SE was 19 years old.[3]  Mr. Anderson did not carry out these threats as he never disseminated the sexual images that he obtained of SE when SE was a juvenile.

*Five Victims outside of the Information*:

There are five other victims of Mr. Anderson's online grooming where Mr. Anderson obtained sexual images of five other juveniles.  Of these victims, MD was over 17 years old, and MD along with WC (another adult who knew Mr. Anderson since they were both juveniles), made plans with Mr. Anderson to move in together when MD turned 18 years old. [4]

---

[3] While it is not Mr. Anderson's intent to downplay his crime of extortion regarding SE, it must be noted that Mr. Anderson and SE shared a lengthy relationship.  They met when the two were both juveniles. The two had played video games together for years on Mr. Anderson's website, "The Forum."  Mr. Anderson was older than SE, but only by approximately four years.  The two experienced a falling out of sorts when Mr. Anderson refused to provide SE with his intellectual property (the code from his game server.). SE then waged a smear campaign against Mr. Anderson which included releasing Mr. Anderson's physical address and claims that he was a pedophile.  Many dark web gamers attempted to "SWAT" Mr. Anderson's address and he was the target of ongoing harassment from blocked phone numbers.  In the end, SE did steal Mr. Anderson's identity as he was able to obtain an image of Mr. Anderson's Minnesota state issued ID and he has also created fraudulent PayPal accounts in Mr. Anderson's name to further his own financial interests. These were the reasons, though criminal and unjustified that Mr. Anderson made the threats to extort SE.

[4] Both MD and WC were engaged in "virtual" romantic relationships with Mr. Anderson; first MD was Mr. Anderson's boyfriend then WC (as an adult) later approached Mr. Anderson. Later, (as adults), the three engaged in conversations consistent with adults who were dating. Mr. Anderson ventured to see both MD and WC on different occasions.  He travelled to see MD when MD was 17 years old, but the two did not sexually engage.  He later travelled to see WC when WC was 18 years old and the two did not engage sexually.

Per Mr. Anderson, he and MD both referred to each other as "boyfriends" and they suffered a traumatic break up.  It was following this break up that Mr. Anderson turned his attention to JNK in 2019.  He later turned his attention to WC in 2020, when WC was an adult.

6

### C. The Government's Concerns re Grooming are Overstated

In 2022, Mr. Anderson was had conversations with JB, a 14-year-old from Anoka, but he did not engage in any sexual contact with JB, nor did he procure any sexual pictures from him. (PSR pg. 8, para. 29.). While JB was well known to Anderson, he made a decision to not move forward sexually with JB.

The same is true of Mr. Anderson's conversations in 2019 with another juvenile known to Anderson, (BO), with whom Mr. Anderson communicated but did not engage with sexually nor did he obtain sexual photos.

The same is also true with RZ, with whom Mr. Anderson conversed with about the possibility of receiving nudes, but in fact he did not receive any photos from RZ, nor did he travel to meet RZ or engage with RZ in any way. (PSR, p. 7 para 24.) It must be noted that when Mr. Anderson was conversing with RZ, he was only 17 years old himself.

For context, it must be noted that all of the minors in question during the relevant timeframe were within three to five years Mr. Anderson's junior, except one. Mr. Anderson's age during the vast majority of his criminal conduct was committed when 18-19 years was old. His criminal conduct in large part diminished of his own accord by the time he was 21 years old following his encounters with JNK. In comparison Mr. Anderson committed only a few acts when he was ages 22-23 years old which includes his attempted extortion of SE and his grooming conversations with JB.

In fact, from April 7 2020- August 7, 2020, Mr. Anderson enlisted in the military in an effort to curb his criminal behavior and engage in society in a productive manner. (PSR, p. 25 para

7

113.) Although Mr. Anderson was not successful in his military bid, he still values lessons that he gained while enlisted. (Govn't Ex. 1, Psychosexual Evaluation, p. 7.)

Mr. Anderson's sexual history includes juveniles (only one physical encounter with JNK in 2019), but it is primarily compromised of sexual activity with adult men- dating all the way back to 2013 when he was just 15 years old. (Id, p. 9-10.)

Mr. Anderson's history demonstrates that his journey is one of child sexual abuse victim who behaved consistent with the lessons of his abuse. He was groomed at age 13 by older men on-line. Mr. Anderson longed for love and belonging and he thought he found it in the sexual exploitation of adult men. Mr. Anderson grew frustrated as an adult, realizing on some level that the attention that adult men gave him as a child was not a substitute for love. However, by age 23, as the Government closed in on Mr. Anderson, he was not actively sexually abusing or sexually extorting any minor. The extent and the severity of Mr. Anderson's conduct is relatively limited, as compared to the defendants in the other cases that the Government cites.

### A. *The Ottinger Case is not analogous to the Case at Bar.*

In contrast to Mr. Anderson's behavior, Ottinger engaged in a catfishing (he pretended to be a girl) and sextortion scheme targeting at least 42 victims using 521 unique telephone numbers. He sexually offended against 23 victims including his widespread distribution of the child pornography that was sent to him by the victims. Most disturbing is that as a "pillar of the community," he also tried to break children's ties to their family. Ottinger also had a collection of child pornography that included images of infants and toddlers. Ottinger also failed to supply the court with the psychosexual evaluation that he claimed to complete. The sentencing court appropriately sentenced Ottinger to 480 months.

8

### B. *The Deling Case is not analogous to the Case at Bar.*
In contrast, to the number of victims of Mr. Anderson, Deling engaged in sextortion of *dozens* of minor girls on-line over six months-time. The Court appropriately sentenced him to 420 months.

### C. *The Whiteford Case is not analogous to the Case at Bar.*
Unlike Mr. Anderson who has no criminal history, Whiteford was previously convicted of two prior child pornography offenses. Also unlike Mr. Anderson, Whiteford also directed his minor victims on how to masturbate themselves and videotape it and deliver it to him, and he also instructed his minor victims on how to sexually abuse a toddler in that person's care. The Court appropriately sentenced Whiteford to 420 months in prison.

### D. *The Monson Case is not analogous to the Case at Bar.*
Similar to Ottinger, but unlike Mr. Anderson's behavior, Monson catfished minor girls by impersonating a minor girl online. Monson's conduct spanned two years and he offended against a dozen victims, and he encouraged his victims to engage in acts of bestiality. The sentencing court appropriately sentenced him to 400 months.

### E. *The Roggenbuck Case is not analogous to the Case at Bar.*
Unlike Mr. Anderson's sexual acts with one 15-year-old boy, Roggenbuck engaged in anal sex with two very young children (ages 2 through age 9 and age 3) that were related to him. He filmed these acts and distributed the recordings on the internet at large. The court appropriately sentenced him to 528 months.

Mr. Anderson's case pales in comparison to these other cases where the defendants were sentenced to 400-528 months. Mr. Anderson offended against 7 victims, none of whom were related to him. He did not distribute the child pornography that he produced to the Internet at large. He sent the video to JNK himself only.

Mr. Anderson was not employed long term as an elementary school teacher. Mr. Anderson worked for short stints at institutions engaged in educating middle school aged children. None of those children that went to the institutions where he taught are his victims. Mr. Anderson spent the majority of his time teaching at Anoka Technical College, where almost all of the attendees were over the age of 18, and only a sparse few where 16-17 years old.

Mr. Anderson did not have a collection of child pornography consisting of images of infants and toddlers, but rather adolescent aged boys. (PSR, p. 8, para 26.)

### III. The Government's reliance on studies regarding recidivism in *Ottinger* are misplaced and not applicable to the Case at Bar.

In *Ottinger,* the Government cited psychological studies of a "sample of sex offenders screened for civil commitment as sexually violent predators" to support their conclusion that "[r]esearch has consistently shown that a younger offender is significantly more likely to reoffend than an older one."

The studies cited by the Government presuppose facts do not present in Mr. Anderson's case. To qualify for commitment as a sexually dangerous person in Minnesota, there must be an adjudication that there are multiple victims and a reticence to treatment such that no safeguards can be put into place to protect the public. Minn. Stat. 253D.02 subd. 15 & 16. (2022.). None of these things have been proven in Mr. Anderson's case and may very well not ever be proven in light of the facts in this case and his scores on psychometrics.

Additionally, to the contrary, the majority of studies conclude the opposite: that youthful offenders are the least likely to reoffend. Given that the majority of Mr. Anderson's crimes were committed when he was 18-19 years old, and his grooming behavior both perpetrated upon him and his acts of grooming upon other juveniles began when he was a juvenile, the following studies are instructive as to Mr. Anderson's recidivism rate.

"The sex offense recidivism rate for adolescents is about 5%." (Worling, Littlejohn and Bookalam)(2010); Caldwell (2012.) In a 2016 meta-analysis of over 30,000 subjects, Caldwell reported that recidivism rates for juveniles with histories of sex offenses was less than 2.75%." (Id.) This means that 97.5% of youth with histories of sexual offenses would NOT be expected to commit another offense. *See* R. Pryzbylski, *"The Effectiveness of Treatment for Juveniles Who Sexually Offend,"* U.S. Department of Justice, Sex Offender Management Assessment and Planning Initiative (July 2015.) (Exhibit A.)

Mr. Anderson was truthful in acknowledging his crimes during his polygraph examination. (Govn't Ex. 2, Polygraph pg. 1.) He also presented as amenable treatment in his psychosexual evaluation. (Govn't Ex. Psychosexual Evaluation, p. 13-21.) While Mr. Anderson's Static-99R and the Stable 2007 scores place him in the "Moderate High nominal risk category to reoffend," the psychosexual evaluator acknowledged that statistics for recidivism in this category are surprisingly quite low. Men with the same risk profile as Mr. Anderson have been seen to recidivate sexually at 1.8% over one year, and 12.2% over five years. (Id, p. 16.)

### **Conclusion:**

This Court has ample reason to depart from the Guidelines or issue a variance and impose the 15-year mandatory minimum sentence.

Dated: **3/9/2023**

Respectfully submitted,

GROSHEK LAW

Christa J. Groshek (#303331)
302 N. 10th Ave
Minneapolis, MN 55401
Tel (612) 827-3833
christa@grosheklaw.com

ATTORNEY FOR Glen Anderson, Defendant.